**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HAE Y. PARK,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>        **Defendant.** | Civil Action No. 17-13139 (WJM)<br><br><br>**OPINION** |

**FALK, U.S.M.J.**

  Before the Court is Plaintiff's motion for leave to amend the Complaint. (CM/ECF No. 43.) Plaintiff seeks leave to increase her claim for damages in excess of the amount of her administrative claim filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675, for injuries she allegedly suffered in a motor vehicle accident involving a United States Postal Service ("Postal Service") truck. (Pl.'s Br. at 1). Defendant, the United States of America ("Defendant" or "Government"), opposes the motion, arguing futility. The Court decides the motion on the papers. Fed. R. Civ. P. 78. For the reasons that follow, Plaintiff's motion is **granted**.

## BACKGROUND

### A. Events preceding the litigation

On the afternoon of December 10, 2015, Plaintiff, Hae Y. Park, ("Plaintiff" or "Mrs. Park") was involved in a serious motor vehicle accident when a Postal Service truck collided with the front of Plaintiff's minivan causing her airbag to deploy. (Compl. ¶¶ 7-11; Certification of Frederick B. Polack, Esq. ("Polack Certif.") ¶ 2.) Although Mrs. Park declined medical attention at the scene, she called 9-1-1 that evening reporting worsening pain and vomiting and an ambulance was dispatched. Mrs. Park, who has limited command of the English language, was transported to the hospital where she complained of, among other things, a blow to her head and injuries to her neck, lower back, right wrist and leg. Plaintiff underwent medical testing. Plaintiff's CT brain scan was normal, she was alert and oriented on neurological assessment, and no concussion or brain injury diagnosis was made. Her diagnosis was limited to muscle strain to her neck and back and a hematoma to her wrist and leg. (Polack Certif. ¶ 5.) She received treatment for her orthopedic and neurological complaints. (Polack Certif. ¶¶ 3-4.)

Approximately two months later, on February 16, 2016, Plaintiff filed an administrative tort claim with the Postal Service alleging $1 million in damages for injuries she sustained in the accident. (Id.) At the time the administrative claim was filed, Mrs. Park's treating physicians indicated that she was suffering from, among other things, a "probable" concussion and post-traumatic headache disorder. (Id. ¶ 7.) Her

doctors did not recommend any testing, treatment or therapy related to these complaints. (Id. ¶ 8.) On September 14, 2017, the Postal Service issued the final denial of Mrs. Park's administrative claim and Plaintiff filed her filed her Complaint on December 15, 2017, demanding $1 million in damages. (Id. ¶¶ 9-10.)

### B. Plaintiff's medical history post filing of her administrative claim

On February 17, 2016, one day after Plaintiff submitted her administrative claim, Mrs. Park was seen for a neurological consultation by Dr. David H. Rosenbaum, M.D. who detected no signs of cranial trauma. (Polack Certif. ¶ 7, Ex. D at 6-8.) Nonetheless, Dr. Rosenbaum's initial impressions included that Mrs. Park suffered from "a probable concussion; posttraumatic headache disorder, which was likely post-concussive" and a neck and back injury. (Id.) Dr. Rosenbaum's treatment recommendations were limited to Mrs. Park's spinal pain. He did not recommend any testing, treatment or therapy related to Mrs. Park's probable concussion or post-traumatic headache disorder. (Id.)

On November 12, 2018, Plaintiff consulted with a Korean speaking neurologist, Dr. Yun-Beom Choi, M.D. because of continuing dizziness and the onset of memory decline. (Polack Certif. ¶ 11.) Dr. Chio diagnosed Plaintiff with vertigo of central (brain) origin and post-concussion syndrome. He prescribed a brain MRI—the first time Mrs. Park was given such a prescription. Unlike the original negative CT brain scan taken at the hospital following the accident, Plaintiff's second scan taken on January 2, 2019, revealed traumatic axonal injury to the frontal lobe and temporal lobes. (Id. at 12.) Plaintiff underwent a neuropsychological screening administered by Dr. Charlene Bang, Psy.D., a Korean speaking neuropsychologist, on January 12, 2019, who diagnosed

3

Plaintiff with Major Neurocognitive Disorder due to the anatomic damage to the lobes of her brain.  (Id. at 14.)  Dr. Bang concluded that as a result of her injury, Plaintiff suffers from deficiencies in memory, planning and decision making.  (Id.)

### C. Appointment of Plaintiff's guardian ad litem

A motion was filed on April 25, 2019, to appoint Plaintiff's husband, In Chul Son ("Mr. Son"), as her guardian *ad litem* in this litigation.  In finding good cause to appoint a guardian *ad litem* to protect Plaintiff's interests in this litigation, the Court relied heavily on Dr. Bang's statement that Plaintiff suffers from "significant impairment in executive function."  In so doing, the Court considered Dr. Bang's explanation that "[e]xecutive function represents a person's ability to plan, organize, initiate and make responsible decisions" and that "[i]t is an essential criterion pertaining to a person's ability to manage affairs of any significant complexity." (Opinion CM/ECF No. 23)  The Court conducted a hearing and entered an Order on June 5, 2020, appointing Mr. Son Plaintiff's guardian *ad litem* for purposes of this case and conferring upon him the authority to make all decisions related to this matter on Plaintiff's behalf. (CM/ECF No. 26.)

### D. Motion to amend

Plaintiff, by her guardian *ad litem*, Mr. Son, now seeks leave to amend the Complaint to increase the amount of her claim for damages from $1 million dollars to $15 million dollars.  (CM/ECF No. 43-2, Ex K.)  Plaintiff moves pursuant to 28 U.S.C. § 2675(b) of the FTCA to increase her claim based on subsequently discovered evidence that Plaintiff maintains could not have been ascertained prior to filing her notice of claim.

4

(Pl.'s Br. at 2.)  Although Plaintiff was diagnosed with a head injury at the emergency room immediately following the December 2015 collision, and diagnosed several months later as having suffered a probable concussion, Plaintiff contends that it was not until years later, and long after submission of her administrative claim, that it was discovered that she had sustained a brain injury involving significant anatomical damage and disabling cognitive deficits.  (Id.)  Plaintiff maintains that because the true extent of her injury was only recently revealed through continuing treatment and testing, there is sufficient new evidence to support her motion for leave to seek damages in excess of the amount sought in the February 16, 2016 administrative claim.

      The thrust of the Government's opposition is that Plaintiff's proposed amendment would be futile because this Court lacks jurisdiction to award damages beyond the $1 million dollar sum stated in Plaintiff's administrative claim.  The Government argues that the time for Plaintiff to amend her claim for damages expired upon the filing of her Complaint and that this Court does not have jurisdiction to award damages beyond the amount presented in the administrative claim.  Acknowledging that the FTCA provides a limited exception to the general principle that a plaintiff may not seek damages exceeding the sum designated in the administrative claim, the Government contends that Plaintiff does not fall into that exception because Plaintiff and her Counsel have, or should have, been aware of her potential cognitive issues at the time she submitted her administrative claim to the Postal Service and at the time of filing her Complaint.  (Def.'s Br. 13.)  The Government further contends that because Plaintiff chose not to pursue treatment for her symptoms until three years after the accident and one year after commencing this

5

litigation, Plaintiff cannot assert that she was unaware of the full extent of her injury and accordingly cannot amend the amount of damages she seeks now.

## DISCUSSION

### A. Legal standard

Requests to amend pleadings are usually governed by the rather liberal Federal Rule of Civil Procedure 15. Under the Rule, leave to amend should be "freely give[n]" when "justice so requires." Fed. R. Civ. P. 15(a)(2). However, under the FTCA, amendments to damages claimed from a federal agency are governed by the more stringent standard of 28 U.S.C. § 2675(b).[1] The statute provides in relevant part:

> [an a]ction under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon *newly discovered evidence* not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of *intervening facts*, relating to the amount of the claim.

28 U.S.C. § 2675(b) (emphasis added). The burden is on the plaintiff to show any newly discovered evidence or intervening facts bearing on the plaintiff's injuries. *See Schwartz v. United States*, 446 F.2d 1380, 1381 (3d Cir. 1971).

Circuit Courts that have addressed the modification of a claim for damages under the FTCA have employed three different tests to determine whether amendment to

---

[1] Under the FTCA, a party asserting a claim for money damages arising out of the negligent or wrongful act of a government employee must first file a claim with the administrative agency at issue. 28 U.S.C. § 2675(a). The agency then has six months within which to consider the claim and respond. 28 C.F.R. § 14.2. The injured party may file suit after the claim is denied or after the time has expired without any action taken by the agency. 28 U.S.C. § 2675(a). A party may amend her claim up until the agency issues a final denial or upon the exercise of the claimant's option to sue after the expiration of the agency's six month consideration period. 28 C.F.R. § 14.2 The claimant is limited to the amount designated in the administrative claim in any lawsuit filed against the agency.

6

increase a damages claim under 28 U.S.C. § 2675(b) should be permitted: the "worst-case prognosis test," the "reasonably discoverable/reasonably foreseeable test," and the "change in expectations test." *Bravo-Garcia v. United States,* No. 13-2185, 2015 WL 224625 at *4 (D.N.J. Jan. 15, 2015).[2] Although the Third Circuit has not yet adopted a specific test to be utilized for such amendments, trial courts in this Circuit often apply the "reasonably discoverable" test. *See Diarara v. United States*, No. 18-3520, 2020 WL 1151162, at *2 (E.D. Pa. Mar. 9, 2020) (citing *Troilo v. Michner*, No. 13-2012, 2015 WL 12839014, at *2 (D.N.J. Nov. 17, 2015); *Njos*, 2015 WL 999398, at *3; *Bravo-Garcia*, 2015 WL 224625, at *6); *contra Chamberlain v. United States,* No. 11-1808, 2012 WL 136896, at *3 (D.N.J. Jan. 18, 2012) (applying worst-prognosis test). Under the reasonably foreseeable test, a plaintiff may generally amend her damages claim where plaintiff's injury "could not have been diagnosed or included" in the administrative claim and the "full extent of [the] [p]laintiff's disability and future medical care and needs were

---

[2] The Second, Fourth, Sixth, and Eighth Circuits have all adopted a reasonably discoverable or reasonably foreseeable test to determine if changed factual circumstances warrant amendment of the damages claim under § 2675. *See, i.e.*, *Allgeier v. United States*, 909 F.2d 869, 879 (6th Cir. 1990) (permitting a plaintiff to recover damages greater than those asserted in the administrative claim where a "significant worsening of her condition well over a year" after the administrative claim was filed and "the need for [a] second operation and extensive additional treatment were not reasonably foreseeable at the time the administrative claim was filed"); *see also Michels v. United States,* 31 F.3d 686 (8th 1994) (reasoning "that § 2675(b) contains an objective standard—newly discovered evidence not reasonably discoverable"). Similar to this test, the Eleventh Circuit has determined "that a reasonably based *change in expectation* as to the severity and permanence of an injury is newly discovered evidence within the meaning of section 2675(b)." *Cole v. United States*, 861 F.2d 1261, 1262 (11th Cir. 1988) (emphasis added); *see also Fraysier v. United States*, 766 F.2d 478, 480 (11 th Cir. 1985) ("[t]he legal question becomes whether this change in expectation, reasonably based, is newly discovered evidence within the meaning of the statute"). By contrast, the First and Fifth Circuits have adopted the worst-case prognosis test. *See Low v. United States*, 795 F.2d 466 (5th Cir. 1986); *see also Reilly v. United States,* 863 F.2d 149 (1st Cir. 1988) (under the worst-case prognosis test, "there is first a subjective test as to whether the specific injuries were known at the time the administrative complaint was made" and ""[t]here is an objective test as to whether the plaintiff could have made out its worst-case scenario based on the basic severity of the injuries that were known." ); *see also Dickerson v. United States*, 280 F.3d 470, 476 (5th Cir. 2002).

7

either facts not reasonably discoverable at the time the administrative claim was [submitted] or intervening facts." *Spivey v. United States,* 912 F.2d 80, 84 (4th Cir. 1990).

    **B. Analysis**

The Court will apply the "reasonably discoverable test" which has been adopted by the majority of those circuits considering the issue of amendment of an FTCA damages claim in deciding this motion.[3] "While still fact intensive, the reasonably discoverable approach focuses on whether it was foreseeable that the plaintiff's injuries would worsen beyond the original claim" and "[t]his approach is consistent with the language in Section 2675(b) which permits an amendment where the new evidence was not 'reasonably discoverable.'" *Bravo-Garcia*, 2015 WL 224625, at *6 (quoting 28 U.S.C. § 2675(b)).

The Court finds that Plaintiff has presented newly discovered evidence that was not reasonably foreseeable at the time she filed her administrative claim and Complaint. When Mrs. Park filed her administrative claim on February 16, 2016, and her Complaint on December 15, 2017, she was not aware, nor could she have been, that she would ultimately be diagnosed with Major Neurocognitive Disorder due to substantial anatomic damage to the frontal and temporal lobes of her brain. Plaintiff's medical tests shortly following the accident revealed a normal CT brain scan and no evidence of brain injury. Some two months later, at the time of the filing of Plaintiff's claim, the gravity of Mrs. Park's diagnosis by her treating physicians was limited to a suspected concussion and

---

[3] The Court notes that the result would be the same under either of the other tests.

post-traumatic headache disorder as no signs of cranial trauma were detected. Because the degree of Plaintiff's injuries was determined to be limited to concussion and headache syndrome, neither testing nor treatment were ordered to address her complaints.

It was not until 2019, long after the filing of the claim and commencement of this litigation, that a brain MRI in January 2019 revealed that Plaintiff had sustained a traumatic brain injury and that the collision allegedly had caused a major neurocognitive disorder. Prior to this time, the focus of Plaintiff's treatments was exclusively on her spinal injuries.

For these reasons, the Court finds that Plaintiff's brain injury and diagnosis of Major Neurocognitive Disorder in early 2019 was newly discovered evidence that was not reasonably foreseeable when she submitted her claim to the Postal Service or filed her Complaint in this Court. In fact, it appears that the prospect of such a diagnosis was essentially ruled out by the CT scan and other neurological testing conducted the day of the accident, as well as a limited finding of a "probable" concussion with no signs of cranial trauma approximately two months after the accident.

The Government argues that because Plaintiff suffered from dizziness and headaches from the time of her accident in December 2015, but did not seek medical treatment or explore their cause until November 2018, she should not be allowed to argue that she was unaware of the full extent of her injuries or that they were not reasonably foreseeable. Specifically, the Government argues that Plaintiff had 22 months after submitting its administrative tort claim and before filing this lawsuit to inform the Postal Service of any amended damage claim, and that she did not discover the extent of her

9

injuries because she did not seek treatment for them before filing the Complaint. The Court is unpersuaded by the Government's argument.

First, despite undergoing testing immediately following the accident and then consulting with a physician some two months later, no further testing or treatment was ordered. Second, Plaintiff was diagnosed with a "probable" concussion and had no reason to believe her diagnosis was not correct. Third, even if Plaintiff continued to suffer from dizziness and headaches as the Government points out, it is unclear if Mrs. Park was able to appreciate her condition and the extent and length of her symptoms during that time. In fact, it is impossible to know exactly when Plaintiff began to suffer from the "significant impairment in executive function" diagnosed by Dr. Bang and relied upon by the District Judge in appointing a guardian *ad* litem to represent her in this case. In fact, it is conceivable that she was suffering from a cognitive disorder long before it was diagnosed and certainly during the 22 months referred to by the Government. This cognitive disorder may have affected her ability to "plan, . . . initiate and make responsible decisions" regarding her health and may have impacted her ability to manage her medical condition at that time. The fact that the Court determined that a guardian *ad litem* is necessary to protect Plaintiff's interests speaks volumes as to her mental capacity which was likely compromised during the time period the Government contends Plaintiff should have been pursuing more aggressive treatment and testing. Even if that were not the case, it is unreasonable to think that Mrs. Park should have possessed insight to anticipate a major neurocognitive disorder when nothing of the sort was suggested by her treating physicians.

The Court finds that Plaintiff could not have reasonably discovered before her administrative claim or Complaint were filed that she was suffering from a brain injury or that she would be diagnosed in January 2019 with Major Neurocognitive Disorder. Plaintiff's original claim for damages of $1 million dollars was calculated on the basis of facts about her medical condition known to her at the time she submitted her claim. The seriousness and gravity of her injuries have changed significantly. These new diagnoses were not reasonably foreseeable at the time the claim and Complaint were filed and constitute newly discovered evidence sufficient to warrant granting Plaintiff's motion to amend to increase her demand for damages.

## CONCLUSION

In sum, the Court finds that Plaintiff has presented newly discovered evidence which warrants amendment of her damages claim. For these reasons, Plaintiff's motion is granted.

        s/Mark Falk
        **MARK FALK**
**Dated: July 27, 2020**        **United States Magistrate Judge**